UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

YEMISRACH JENBERE,

              Plaintiff,

      v.                                         **DECISION AND ORDER**
                                                   19-CV-310S

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

      1.      Plaintiff Ms. Yemisrach Jenbere brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for supplemental security income benefits under Title XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her application with the Social Security Administration on August 8, 2014. Plaintiff alleged disability beginning January 1, 2009, due to lumbar degenerative disc disease; osteoarthritis; headaches and tooth pull secondary to a disorder of unknown etiology; depression; gastroesophageal reflux disease ("GERD"); and hypothyroidism. Plaintiff's application(s) were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

      3.      On June 20, 2017, ALJ Bryce Baird held a hearing at which Plaintiff—represented by counsel—and Vocational Expert Jay Steinbrenner appeared and testified. (R.[1] at 28-72.) At the time of the hearing, Plaintiff was 42 years old when she applied for benefits, she has a diploma from a foreign high school, she speaks Amharic and learned

---

[1] Citations to the underlying administrative record are designated as "R."

English as a second language.  She does not have past relevant work experience.  (R. at 21-22, 10, 67, 30, 245.)  Plaintiff required an Amharic interpreter during the hearing.  (R. at 10.)

4. The ALJ considered the case *de novo* and, on January 30, 2018, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[2]  (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 10, 11.)  Plaintiff filed a response on September 12, 2019 (Docket Nos. 14, 15 (Amended Reply)), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is **granted**, and Defendant's motion is **denied**.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than

---

[2] The ALJ's January 30, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review on January 9, 2019.

one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-142 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based

3

>solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.   Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).

11.   The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the application date of August 8, 2014; plaintiff did not have any past relevant work. (R. at 12, 21.) At step two, the ALJ found that Plaintiff has the following severe impairment: lumbar degenerative disc disease; osteoarthritis; headaches and

4

tooth pull secondary to a disorder of unknown etiology; depression. Id. at 13. The ALJ found plaintiff's other claimed impairments (GERD, hypothyroidism, and obesity) were not severe impairments. Id. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 13-16.

      12.    Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following exceptions:

> [Plaintiff] could stand or walk for up to 4 hours in an 8-hour day. The claimant could occasionally climb ramps and stairs; never kneel or crawl; never climb ladders, ropes or scaffolds; occasionally balance and crouch; and frequently stoop. The claimant may use a hand held assistive device for walking over uneven terrain or for prolonged ambulation. The claimant cannot use foot controls with either the left or the right foot. The claimant is limited to environments in which there is no exposure to excessive heat, no exposure to excessive vibration, and she would be limited to moderate noise levels, as moderate is defined in the Selected Characteristics of Occupations, an appendix to the Dictionary of Occupational Titles ("DOT"). The claimant cannot tolerate exposure to hazards such as unprotected heights or moving machinery. The claimant cannot tolerate direct exposure to bright or flashing lights. The individual is limited to simple, routine tasks that can be learned after a short demonstration or within 30 days. There would be no production rate or pace work. The claimant cannot perform teamwork, such as on a production line. The claimant is limited to communicating and understanding simple information.

(R. at 16.)

      13.    At step four, the ALJ found Plaintiff did not perform any past relevant work. (R. at 22.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Id. The ALJ posed hypotheticals to the vocational expert and the expert opined that a hypothetical claimant with plaintiff's age, education, work experience (or lack thereof), and RFC could perform such occupations such as injection molding machine tender, small products assembler, or

5

stock checker, all light exertion work.  Id.  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 23.)

14. Plaintiff argues that the ALJ's decision at step five that plaintiff could perform other work is not supported by substantial evidence because it relies upon the opinion of the vocational expert that did not support the decision that plaintiff could perform such other work and defendant fails to meet the burden at this step to prove her disability. Additionally, plaintiff faults the ALJ for not properly developing her education level given her literacy in English as a second language.  Finally, the physical RFC finding that plaintiff can stand for four hours was not supported by substantial evidence.  For the reasons that follow, this argument is **ACCEPTED**.

15. First, the ALJ's finding that plaintiff could perform other work was based upon the vocational expert's opinion on exertional demand of walking and standing which conflicts with the definition of light work in the Dictionary of Occupational Titles ("DOT"). (No. 10-1 at 14-15.)  The expert testified that he was consistent with the DOT (R. at 70) but plaintiff claims that the expert was not.  (No. 10-1 at 15.)

16. Defendant challenges this by pointing out that light work in Social Security regulations is not dependent upon the length of time a claimant can stand or needs to sit. (No. 11-1 at 22).

17. Social Security regulations define light work by the amount an employee can lift, lifting no more than 20 pounds at a time and frequent lifting or carrying 10 pounds, 20 C.F.R. § 416.967(b).  Both parties cite to Social Security Ruling 83-10, 1983 WL 31251 (Jan. 1, 1983). (No. 10-1 at 14; No. 11-1 at 22.)  That Ruling's definition states that light work "requires a good deal of walking or standing," differing from sedentary work and a

6

job is also light work "when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than sedentary work," id. at *5, while noting that "relatively few unskilled light jobs are performed in a seated position," id. For "frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," id. at *6. The DOT defines "light" work as having physical demand requirements greater than sedentary work, work requiring "walking or standing to a significant degree" or requires sitting and pushing or pulling arm or leg controls, U.S. Dep't of Labor, Dictionary of Occupational Titles, App'x C, "Components of the Definition Trailer," (rev. ed. 1991) (No 10-1 at 14).

18.     It is to be noted that the ALJ found that the vocational expert's testimony is inconsistent with the DOT because "it contains limitations not addressed in the DOT" (R. at 22; No. 10-1 at 15) without stating what those limitations are and also, that another Social Security Ruling, SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000), requires the ALJ to obtain a reasonable explanation for the conflict of the expert's opinion and the DOT. But, the ALJ and defendant here deferred to the vocational expert's education and experience (R. at 22; No. 11-1 at 23) and did not explain the conflict further. The defendant simply argues that the ALJ asked the expert about the existence of a conflict with the DOT and properly relied upon the expert's conclusion that no conflict existed (No. 11-1 at 24; R. at 70) despite the ALJ acknowledging the conflict in the decision (R. at 22). Defendant further argues that, since the DOT was silent about the additional limitations, that the ALJ could rely upon the experience of the vocational expert as to those limitations (No. 11-1 at 24). The ALJ here, however, did not provide a reasonable

7

explanation for the conflict; instead the ALJ said that the unspecified additional limitations are not addressed by the DOT definition for "light work" without justifying the application of those limitations.

19. The ALJ found that plaintiff could stand for four hours in a workday and included this as a factor in the hypothetical that formed the basis of the decision. (R. at 16, 68, 22.) Plaintiff argues that this finding lacked substantial evidence, being based only on the opinions of consultative examiner and her primary care physician, to which the ALJ gave some weight (R. at 19-20). (No. 10-1 at 21.) Plaintiff, however, complains of bilateral knee pain secondary to osteoarthritis, persistence headaches, foot pain and weakness, and low back pain, with diagnostic imaging demonstrating degenerative joint disease with compression. (No. 10-1 at 22.) She also objects to "the illogical combination of findings, that an individual is so limited in use of lower extremities that they cannot use any foot controls at all yet the same individual can stand and walk half the day." (No. 15 at 4).

20. Next, the ALJ failed to develop the record concerning plaintiff's education, finding that plaintiff completed high school. (R. at 21.) Plaintiff completed high school in Ethiopia, studying home economics. (R. at 163, 210, 245, 249; No. 10-1 at 17.) She argues that the record does not show that Ethiopian education is equivalent to American education and her focus on home economics may not have incorporated academic subjects, 20 C.F.R. § 416.964(b)(4). (No. 10-1 at 17-18.) She also contends that the ALJ erred in assessing her literacy in English. (No. 10-1 at 18.) She adds that she never worked in the United States. (No. 10-1 at 20; R. at 40, 245.)

21. Defendant counters that plaintiff has not shown the basis that an education in Ethiopia differs from that in the United States. (No 11-1 at 20.) Plaintiff herself testified that she completed high school with specialized training in home economics. (R. at 42, 159, 245; No. 11-1 at 20.) Plaintiff testified that while, she preferred using an Amharic interpreter for the hearing, she said she read and understood English, could write her name in English, and was attending school to learn English. (R. at 157, 30, 168, 172, 248; No. 11-1 at 21.)

22. Plaintiff replies that the ALJ failed to uphold his affirmative duty to develop the record on plaintiff's education and not merely rely upon her testimony. (No. 15 at 7.) The ALJ cannot rely upon plaintiff's testimony alone as to her level of education, SSR 83-10, 1983 WL 31251, at *8 (Jan. 1, 1983). (No. 15 at 7.)

23. Through an Amharic interpreter, plaintiff testified that she "have 12th grade. It's long time in grade in my country [Ethiopia], not here." (R. at 10, 41-42.)

24. Evaluation of education under the Social Security regulations considers six factors; pertinent to this case is the quality of high school education, 20 C.F.R. § 416.964(b)(4), illiteracy, id. § 416.964(b)(1), and inability to communicate in English, id. § 416.964(b)(5). High school education means abilities in reasoning, arithmetic, and language skills acquired through formal schooling to the twelfth grade, id. § 416.964(b)(4), while illiteracy means the inability to read or write, generally a person with little or no formal schooling, id. § 416.964(b)(1), which plaintiff argues it is literacy in English (No. 10-1 at 18, citing Tran v. Comm'r of Soc. Sec., No. 1:15-CV-0559 (GTS/WBC), 2016 WL 11477389, at *8 (N.D.N.Y. Aug. 25, 2016) (Carter, Mag. J.) (Report & Rec.)). Inability to communicate in English is a separate consideration because English is the dominant

language in this country and "it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language," id. § 416.964(b)(5). Thus, the ALJ has to consider a claimant's ability to communicate in English in evaluating what work, if any, the claimant can do, regardless of their native language, id.

25.    Plaintiff is studying English although she graduated from high school in Ethiopia (R. at 248.) The record does not discuss plaintiff's literacy in English or whether she studied English in high school. The record does not reveal plaintiff's academic courses she took then aside from home economics and her statement to the psychological consultant that she was in "regular education" with that phrase not defined. (R. at 245.) There is no substantial evidence of plaintiff's education and fluency in English that she could perform the occupations recommended by the vocational expert.

26.    Plaintiff argues that, combining her education level (as illiterate) and exertional limitations with her age and work experience (or lack thereof in this country) while applying the Medical-Vocational Rules, under Rule 201.17 she concludes that she would be deemed disabled. (No. 10-1 at 24.) Defendant denies that this is the appropriate Medical-Vocational Rule, given plaintiff's education and assuming sedentary work level; defendant contends Medical-Vocational Rules 201.18 (limited or less education, at least literate and able to communicate in English), 201.19, or 201.21 (high school graduate) are applicable and all would find her not disabled. (No. 11-1 at 21). Defendant's argument applies sedentary rule and not light work (where plaintiff would not be disabled under the relevant Medical-Vocational Rule for her age and work experience) found by the ALJ. Plaintiff replies that her testimony alone is insufficient to establish her

level of literacy and education, that the ALJ needed evidence of her educational capabilities, SSR 83-10, 1983 WL 31251, at *8. (No. 15 at 7.) She faults defendant for post hoc rationalization that the ALJ found she could perform unskilled occupations, hence did not require literacy. (No. 15 at 7-8.)

27. Given the errors in determining plaintiff's level of education (specifically her fluency in English) and her capability to perform light work, this Court will not conclude whether the Medical-Vocational Rule is correct. The Medical-Vocational Rule assessment is dependent upon a correct determination of those two aforementioned factors. On remand, the ALJ can determine the appropriate Rule.

28. The ALJ erred at step five in determining the degree of work plaintiff can perform as "light work" and failed to assess her educational level given her Ethiopian education and currently learning English.

For the foregoing reasons, this Court finds that **remand is warranted**.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that the case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   May 11, 2020
         Buffalo, New York

                                              s/William M. Skretny
                                           WILLIAM M. SKRETNY
                                         United States District Judge